IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LISA WETH<br><br>Plaintiff,<br><br>v.<br><br>NIEDERST MANAGEMENT GROUP, LTD.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.: 1:17cv00751<br><br>JUDGE PATRICIA A. GAUGHAN<br><br>PLAINTIFF'S FIRST AMENDED COMPLAINT |

Plaintiff, Lisa Weth, by and through undersigned counsel, as her First Amended Complaint against Defendants, states and avers the following:

**PARTIES**

1. Defendant Niederst Management Group, Ltd. is an Ohio limited company with its principal offices located at 21400 Lorain Road, Fairview Park, Ohio 44126
2. Defendant Niederst Management, Ltd. is an Ohio limited company with its principal offices located at 21400 Lorain Road, Fairview Park, Ohio 44126
3. Niederst Management Group, Ltd. is the parent company of Niederst Management, Ltd.
4. Niederst Management Group, Ltd. and Niederst Management form a single employer for the purposes of the claims asserted by Weth herein, in that they have common offices, common management, common record keeping, common and shared equipment, shared bank accounts, centralized control of labor relations and personnel, and common ownership and financial control. Niederst Management Group, Ltd. and Niederst Management, Ltd. are hereinafter referred to collectively as "Niederst Management."
5. Defendant Adrina Niederest is an owner, principal, and or officer of Niederst Management, who at all times material to the Complaint acted directly or indirectly in the interest of Niederst Management, and is an employer within the meaning of Ohio R.C. 4112.01(A)(2).

6. Defendant Shawn Whiteman is an owner, principal, and or officer of Niederst Management, who at all times material to the Complaint acted directly or indirectly in the interest of Niederst Management, and is an employer within the meaning of Ohio R.C. 4112.01(A)(2).
7. Plaintiff Lisa Weth is a resident of the city of Brookpark, county of Cuyahoga, state of Ohio.
8. Weth was employed by Defendants as a limousine driver from approximately May of 2010 until October of 2010, and more recently as a supervising exterminator from October of 2010 until she was wrongfully terminated on September 16, 2016.

**JURISDICTION & VENUE**

9. Jurisdiction is proper over Defendants pursuant to 28 U.S.C. § 1331 in that Weth is alleging a federal law claim arising under the Family Medical Leave Act, 29 U.S.C § 2601, *et seq*. Thus, this Court has original jurisdiction over the federal law claims asserted in this Complaint under 28 U.S.C. § 1331. Additionally, this Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.
10. Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, because it is the district court for the district, division, and county within which the Defendants operate and conduct business.

**FACTS**

11. Niederst Management is a property management company which owns and manages residential and commercial real estate in Ohio, Michigan, and Florida.
12. Until approximately September 16, 2016, Niederst Management maintained an "Eco-Treat" extermination department.
13. Weth was the supervisor of the Eco-Treat department.
14. Niederst Management has a policy against granting reasonable accommodations for its employees.





15. Employees who require any form of accommodation for their disability are terminated by Defendants as a matter of policy.
16. Several of the exterminators Weth supervised had frequent and repeated disciplinary issues for their conduct and attendance.
17. During Weth's employment with Niederst Management, she supervised an exterminator named John Kassay.
18. Kassay was an excellent employee who received little to no discipline during his employment.
19. In our around late October of 2013, Kassay showed up to work with a wrist brace on his wrist.
20. Pursuant to Niederst Management policy, Weth contacted Niederst Management's Human Resources office to report Kassay.
21. Weth was instructed by Niederst Management's Human Resources Manager, Denise Pacak, to give Kassay FMLA paperwork.
22. Pacak told Weth that Kassay could not come back to work unless his doctor indicated on the FMLA paperwork that Kassay could work with no restrictions.
23. About a week after Kassay was given the FMLA Paperwork, Weth was instructed by Whiteman and Niederst to tell Kassay he was suspended until he could work with no restrictions.
24. When Weth told Kassay that he was being suspended, he became angry, and told Weth that he thought he was being discriminated against and that he was going to call a lawyer.
25. Weth reported Kassay's complaint that he was being discriminated against, and that he planned to call a lawyer, to Whiteman and Pacak.
26. Whiteman and Pacak told Weth that Whiteman and Niederst wanted Weth to ignore Kassay and to try and avoid his calls.
27. Subsequently, Defendants terminated Kassay.
28. Subsequently, Kassay sued Niederst Management, Ltd., Pacak, and Weth for disability discrimination, failure to accommodate, retaliation, and intentional infliction of emotional

distress in the Cuyahoga County Court of Common Pleas, *John Kassay v. Niederst Management, Ltd.* 14-cv-834274.

29. Niederst Management provided defense counsel for Weth and Pacak, Attorney Lester Armstrong.
30. Armstrong represented Niederst Management, Pacak, and Weth concurrently in defense of Kassay's claims.
31. Niederst and Whiteman controlled the defense of the *Kassay* litigation, despite the fact that they were not named as defendants.
32. Niederst and Whiteman interfered with Weth's access to Armstrong.
33. During the *Kassay* litigation, Kassay offered to enter into a carve-out settlement with Weth.
34. Kassay's settlement offer to Weth did not require Weth to pay any money to Kassay.
35. Kassay's settlement offer would have allowed Weth to agree to a consent judgment, and Kassay would covenant not to collect against Weth, and only against Niederst Management Ltd. and Pacak.
36. Niederst refused to allow Armstrong to discuss Kassay's settlement offer to Weth unless Niederst was present.
37. Niederst attended Weth's meeting with Armstrong to discuss Kassay's settlement offer.
38. During Weth's meeting with Armstrong, Niederst pressured Weth to reject Kassay's offer, and made assurances to Weth that if Kassay obtained a judgment against Weth, Niederst or Niederst Management would take care of it.
39. Niederst threatened Weth that accepting Kassay's settlement offer would be tantamount to throwing Niederst and Niederst Management "under the bus."
40. Niederst strongly implied to Weth that she would lose her job if she accepted Kassay's settlement offer.





41. Throughout the *Kassay* litigation, Niederst and Whiteman continually pressured Weth to lie to protect Niederst Management and assured Weth that any liability she had for Kassay's claims would be taken care of by Niederst, Whiteman, and Niederst Management.
42. In or around March of 2014, Weth injured her knee and ankle when she tripped over a poorly marked step at work.
43. Weth's injury substantially limited her ability to perform several major life activities, such as standing and walking.
44. Weth's work-related injury rendered her disabled.
45. Weth filed a claim for Worker's Compensation benefits as a result of her work-related injury.
46. Weth made Defendants aware of her injury and resulting disability.
47. Despite her disability, Weth was still able to perform the essential functions of her job, and continued to do so until approximately June of 2016.
48. By June of 2016, Weth required surgery for her disability.
49. In or around August of 2016, Weth's physician provided Defendants with paperwork indicating that Weth would be able to return to work with restrictions on September 12, 2016.
50. Weth took FMLA for her time away from work.
51. Beginning on September 6, 2016, the Kassay case was tried before a jury.
52. Weth testified honestly during the Kassay trial.
53. On September 9, 2016, the jury unanimously found that Weth, Pacak, and Niederst Management had discriminated and retaliated against Kassay.
54. As part of their verdict, the jury awarded Kassay in excess of $580,000.00 in compensatory and punitive damages.
55. The jury awarded Kassay $100.00 in compensatory damages and $0.01 in punitive damages against Weth.





56. Subsequent to the trial, Niederst and Whiteman blamed Weth and Pacak for the jury's verdict, stating that the verdict was the result of Weth and Pacak's failure to "get their story straight."

57. On Weth's way home from the trial, Whiteman called her and terminated her employment.

58. As a justification for Weth's termination, Whiteman stated that Niederst Management was shutting down Eco Treat indefinitely.

59. Whiteman advised Weth that she would not be returning to work with medical restrictions.

60. Upon information and belief, all other employees of Eco Treat were reassigned to other positions within Niederst Management.

61. At the time of Weth's termination, Niederst Management had other positions available that would have met her medical restrictions and accommodated her disability.

62. At the time of Weth's termination, Weth still had available FMLA leave.

63. The reason Defendants offered for Weth's termination is a pretext or a cover up for unlawful retaliation based upon Weth's protected activity of filing a claim for Worker's Compensation benefits.

64. The reason Defendants offered for Weth's termination is a pretext or a cover up for unlawful retaliation based upon Weth's protected activity of testifying in Kassay's disability discrimination and retaliation trial.

65. The reason Defendants offered for Weth's termination is a pretext or a cover up for unlawful retaliation based upon Weth's protected activity of taking FMLA leave.

66. The reason Defendants offered for Weth's termination is a pretext or a cover up for unlawful discrimination based upon Weth's disability.

**<u>COUNT I: RETALIATORY DISCHARGE IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT</u>**

67. Weth restates and realleges each and every allegation contained above as if fully rewritten herein.







68. Defendants willfully retaliated and discriminated against Weth for taking FMLA leave by terminating her employment.

69. As a direct and proximate cause of Defendants' intentional, wrongful, and unlawful acts against Weth, she has suffered and will continue to suffer damages.

70. As a direct and proximate cause of Defendants' conduct, Weth is entitled to all damages provided for in 29 U.S.C. 2617, including liquidated damages, costs and reasonable attorney's fees.

**COUNT II: WRONGFUL TERMINATION BASED ON DISABILITY DISCRIMINATION**

71. Weth restates and realleges each and every allegation contained above as if fully rewritten herein.

72. Defendants terminated Weth because she is disabled or because of her physical impairment.

73. Defendants terminated Weth because they regarded her as being disabled or as having a physical impairment.

74. Defendants' termination of Weth violated Ohio's law against discrimination, Ohio. R.C. 4112.02(A).

75. As a direct and proximate cause of Defendants' intentional, wrongful, and unlawful acts against Weth, she has suffered and will continue to suffer damages.

**COUNT III: DISABILITY DISCRIMINATION BASED UPON FAILURE TO PROVIDE REASONABLE ACCOMMODATION**

76. Weth restates and realleges each and every allegation contained above as if fully rewritten herein.

77. Defendants had knowledge of Weth's disability at all relevant times during her employment.

78. Weth requested to return to work with minor medical restrictions.

79. Weth's requested accommodations were reasonable.





80. Weth's requested accommodations did not present an undue hardship on Defendants in providing those reasonable accommodations.

81. Defendants knew that Weth would be able to perform all of her essential job functions with reasonable accommodation.

82. Defendants terminated Weth instead of offering to provide her with any accommodations for her disability.

83. When Weth learned that Defendants were eliminating her department and reassigning its employees, she requested to be reassigned.

84. Defendants had positions available that would have accommodated Weth's disability.

85. Weth's request to be reassigned was reasonable, and did not pose an undue burden on Defendants.

86. Defendants refused to reassign Weth, or to provide her with any accommodation that would allow her to continue her employment with Defendants.

87. As a direct and proximate cause of Defendants' intentional, wrongful, and unlawful acts against Weth, she has suffered and will continue to suffer damages.

**COUNT IV: RETALITION IN VIOLATION OF R.C. § 4112.02(I)**

88. Weth restates and realleges each and every allegation contained above as if fully rewritten herein.

89. Defendants terminated Weth because she testified truthfully during the Kassay trial.

90. Defendants' conduct was motivated by retaliatory discrimination, in violation of Ohio R.C. 4112.02.

91. As a direct and proximate cause of Defendants' intentional, wrongful, and unlawful acts against Weth, she has suffered and will continue to suffer damages.





**COUNT V: WORKER'S COMPENSATION RETALIATION**

92. Weth restates each and every prior paragraph of this Complaint, as if it were fully restated herein.
93. In retaliation against Weth for filing a claim for Worker's Compensation benefits, Defendants terminated Weth on or about September 9, 2016.
94. Weth was terminated without just cause for filing a claim for Worker's Compensation benefits.
95. On or around November 18, 2016, Weth provided written notice to Defendants of her intent to pursue a Worker's Compensation retaliation claim.
96. Weth is therefore entitled to recover damages from Defendants for their wrongful termination of her in retaliation for filing a claim for Worker's Compensation benefits under R.C. § 4123.90.
97. As a direct and proximate cause of Defendants' wrongful conduct, Weth has suffered and will continue to suffer damages.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Lisa Weth demands from Defendants the following:

(a) An award against each Defendant of compensatory and monetary damages to compensate Weth for back pay, front pay, physical injury, physical sickness, and other consequential and/or liquidated damages, in an amount in excess of $25,000 per claim to be proven at trial;

(b) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(c) Liquidated damages as authorized by 29 U.S.C 2617(a)(1)(iii);

(d) An award of reasonable attorneys fees and non-taxable costs for Weth's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.





Respectfully Submitted,

*/s/ Brian D. Spitz*
Brian D. Spitz (0068816)
Chris P. Wido (0090441)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Blvd., Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: brian.spitz@spitzlawfirm.com
chris.wido@spitzlawfirm.com

*/s/ Michael J. Stanuszek*
Michael J. Stanuszek (Bar # 0078283)
THE STANUSZEK LAW GROUP, PLLC
800 S. Gay Street, Suite 700
Knoxville, Tennessee 37929
Telephone - 865-696-1032
Fax - 865-381-1340
mjs@stulaw.org

*Attorneys for Plaintiff Lisa Weth*

**JURY DEMAND**

Plaintiff Lisa Weth demands a trial by jury by the maximum number of jurors permitted.

*/s/ Brian D. Spitz*
Brian D. Spitz (0068816)



